# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO: 3:06-CV-161

| | |
|---|---|
| EMPOWERED BENEFITS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| BLUE CROSS BLUE SHIELD OF ) | |
| TENNESSEE, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on the Defendant Blue Cross Blue Shield of Tennessee's ("BCBST") "Motion to Dismiss, or Alternatively, to Stay This Litigation and Compel the Parties to Arbitration" (Document No. 11), filed June 5, 2006; Plaintiff's Response to the Motion to Dismiss, or Alternatively, to Stay This Litigation and Compel the Parties to Arbitration (Document No. 15), filed July 5, 2006 by Empowered Benefits, LLC ("Empowered"); and Defendant's Reply to Plaintiff's Response (Document No. 19), filed July 24, 2006. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b) and is now ripe for disposition.

Having considered the papers, the record, the arguments of counsel at a motions hearing on May 15, 2007, and the applicable authority, the undersigned will <u>grant</u> the Defendant's motion to stay.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Empowered brought suit on April 6, 2006, alleging copyright infringement against BCBST. Both parties are in the business of administering employee benefits programs. Empowered, as a part

of its business, developed a series of copyrighted computer software applications which it leases to its clients. Pursuant to a License Agreement entered into on or about September 20, 2004, Empowered permitted BCBST to use a copyrighted computer software application entitled Plan Comparison Tool. This tool is an Internet-based application developed and owned by Empowered to assist individual policy holders in comparing various benefits packages. In November 2005, with the License Agreement in full effect, BCBST launched a competitive Internet-based computer software application which Empowered alleges is copied from and substantially similar to the Plan Comparison Tool. Empowered also alleges that prior to the License Agreement, BCBST had no such Internet-based software application. The License Agreement did not yield BCBST any rights to copy or create any subsequent work based on the Plan Comparison Tool.

On June 5, 2006, in response to Empowered's Complaint, BCBST filed a "Motion to Dismiss, or Alternatively, to Stay This Litigation and Compel the Parties to Arbitration"(Document No. 11). BCBST contends that the License Agreement, drafted by Empowered, contains an arbitration clause which governs this dispute. The arbitration clause provides:

> 10.3 Governing Law.
> This agreement shall be construed and interpreted in accordance with Company's state and federal laws. Disputes arising under these Agreements, which the Parties are unable to resolve between themselves, shall be resolved under the Commercial Arbitration Rules of the American Arbitration Association, unless the Parties agree otherwise.

BCBST seeks dismissal or stay of the litigation and an order compelling Empowered to participate in arbitration. Empowered argues that this claim is independent of the License Agreement and therefore should not be governed by that contract or by the arbitration clause within it. After carefully considering the matter, the Court believes a stay is appropriate.

## II. STANDARD OF REVIEW

The Court must analyze this case within the framework of both a Motion to Dismiss and a Motion to Compel Arbitration. A Motion to Dismiss made under Rule 12(b)(6) should be granted where "it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." Mylan Labs, Inc v. Matakari, 7 F.3d 1130, 1134 (4th Cir. 1993). "[T]he court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Id. A motion to dismiss tests the "legal sufficiency of the complaint, and not the facts in support of it." Eastern Shore Markets, Inc v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000).

When determining the enforceability of an arbitration provision, the United States Supreme Court has endorsed a "[h]ealthy regard for the federal policy favoring arbitration." Long v. Silver, 248 F.3d 309, 316 (4th Cir. 2001) (citing Moses H. Cone Mem. Hosp. v. Mercury Constr. Co., 460 U.S. 1, 24-25, (1983)). "Although claims must be within the scope of an arbitration clause to be referable to arbitration, the United States Supreme Court has announced... 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.' Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985) (quoting Moses H. Cone Mem. Hosp. V. Mercury Constr. Co., 460 U.S. 1, 24-25, (1983)).

Judicial review of arbitration agreements is limited to evaluating "whether a valid agreement to arbitrate exists" and whether "the specific dispute falls within the substantive scope of the agreement." Murray v. United Food and Comm. Workers Intl Union, 289 F.3d 297, 302 (4th Cir. 2002) (citation omitted). The courts have laid out a two-step analysis in which they "must first decide (1) whether a party agreed to submit to arbitration, and (2) which disputes the parties agreed

to submit to arbitration." Alamria v. Telcor International, Inc., et. al., 920 F.Supp. 658, 662 (D.Md. 1996). In the first step, the Court must determine if there is a valid arbitration agreement between the parties using "state-law principles that govern the formation of contracts." First Options of Chicago, Inc. V. Kaplan, 514 U.S. 938, 944 (1995). Since there is no challenge to the validity of the arbitration clause in this case, the Court will move directly to determining whether the scope of the arbitration clause encompasses the dispute. When deciding if the arbitration clause encompasses the dispute, "a court must determine whether the factual allegations underlying the claim are within the scope of the arbitration clause, regardless of the legal label assigned to the claim." J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 319 (4th Cir. 1988).

### III. DISCUSSION

BCBST contends that litigation should be stayed in favor of arbitration. In support of that contention, it points to the arbitration clause included in the License Agreement. Empowered contends that the arbitration clause is not applicable to the underlying dispute as it does not arise under the agreement. The Court finds that the copyright infringement claim does fall within the parameters of the contract and as such should be stayed in favor of arbitration.

The Federal Arbitration Act ("FAA") has established a strong federal policy favoring the enforcement of written arbitration agreements. The FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement ....

9 U.S.C. § 3. Provisions of the FAA that provide for a stay of proceedings when one party refuses

to comply with an arbitration agreement "manifest a liberal federal policy favoring arbitration agreements." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991). This policy guides courts to resolve any doubts regarding arbitration agreements in favor of arbitration, "whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). See also O'Neil v. Hilton Head Hosp., 115 F.3d 272, 273-274 (4th Cir. 1997). The Fourth Circuit has affirmed the policy favoring arbitration holding that:

> [T]he heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration. Thus, we may not deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.

Long v. Silver, 248 F.3d 309, 315-16 (4th Cir. 2001)

For enforcement of the arbitration clause, BCBST need only show that the License Agreement contained a valid arbitration clause and that the dispute falls under the scope of that agreement. Both parties concede that a valid arbitration clause exists. Empowered's contention is that its complaint falls outside the scope of the broad arbitration clause. Empowered argues that it never agreed to arbitrate any copyright infringement claims and that such claims are separate and do not arise under the agreement. Empowered further argues that copyright infringement claims should not be subject to arbitration because the injunctive relief desired cannot be granted by arbitrators.

The Court finds each of Empowered's arguments ultimately unpersuasive. The reasoning behind the Court's holding is consistent with National Association of Associate Publishers, Inc. v. Prince Publishing, Inc, 1997 WL 34588520 (M.D.N.C. May, 8 1997). Empowered relies on Desktop

Images, Inc. v. Ames, 929 F. Supp. 1339, (D.Co. 1996), for the central authority to support their argument. Prince Publishing distinguished Desktop in the same way this Court does today[1]. The distinguishing point is the relationship between the copyright claims and the Licensing Agreement. See Id. To determine if the dispute falls under the scope of the agreement, the Court construes the language broadly, and has "assigned to arbitration all disputes relating to the agreement or its interpretation." Local Union No. 637, IBEW v. Davis H. Elliot Co., 13 F.3d 129, 132 (4th Cir. 1993). This district holds that "a broadly worded arbitration clause applies to disputes that do not arise under the governing contract when a 'significant relationship' exists between the asserted claims and the contract in which the arbitration clause is contained." Smith v. Cato, 2006 WL 1285521 (W.D.N.C. May 9, 2006). The Court thus finds that Empowered's copyright infringement claims must be analyzed under the "significant relationship" test due to the broad construction of the arbitration clause found in the agreement.

The arbitration clause states that it encompasses "disputes arising under these agreements." "Arising under" is the sole term given to describe the parameters of the clause. The drafting party gives no other clarifying terms, therefore illustrating the intent to give the clause a broad authority over any issue related to the agreement. Empowered, the drafting party, could have limited the arbitration clause by providing for specific issues to be included or excluded. In choosing to construct the clause broadly, Empowered opened the door for judicial interpretation that must be viewed in the light most favorable to arbitration. Empowered argues that it never agreed to arbitrate copyright infringement claims; however, their general construction of the arbitration clause shows

---

[1] The Court in Desktop found that the copyright claims were not dependent on the licensing agreement because the contract gave licensor exclusive ownership rights of all copyright interest in the licensed product. Id. at 1340.

no intent to exclude such claims.

The License Agreement and the claim in this case are not independent like those in Desktop. A similar distinction is made in Prince Publishing. Unlike Desktop, evidence in this case will include evidence concerning the agreement. The License Agreement provided the vehicle through which the claim arose. BCBST would not have had access to the Plan Comparison Tool that is the source of the infringement but for the agreement. Under the "signification relationship" test, the copyright infringement claim can be adequately related to the agreement as it is essentially a dispute over the use of the copyrighted software provided through the agreement. The agreement will be used to determine what rights were bestowed upon or reserved for each party and which rights were violated. The Court would be required to examine the parties' performance and interpret the License Agreement in order to find a resolution for Plaintiff's claims. Although the Complaint was not styled as breach of contract, the terms of the License Agreement are inextricable from the underlying claim of copyright infringement.

Empowered argues further that infringement claims, unlike breach of contract, cannot be subjected to arbitration and that injunctive relief cannot be granted by an arbitrator. Fourth Circuit precedent illustrated by Summer Rain v. Donning Company/Publishers, Inc., 964 F.2d 1455 (4th Cir. 1992), contradicts Plaintiff's assertions. Summer Rain involved sixteen claims, including claims for copyright infringement, where the arbitration agreement contained express exemption for claims of failure to pay royalties. Id at 1457-1458. The Court held that all of the other claims, excluding express exemptions, were to be submitted to arbitration. Copyright infringement claims were expressly admitted for arbitration. Id at 1461. The Court finds that Summer Rain affirms that copyright infringement claims may be properly within the scope of arbitration.

The Court also finds that the argument that injunctive relief cannot be granted by an arbitrator is without merit. Both the courts and the Commercial Arbitration Rules of the American Arbitration Association have acknowledged that arbitrators are vested with the authority to grant injunctive relief. It is commonly "recognized that an arbitrator or board of arbitrators may, in the proper case, include an injunction or orders for specific performance in the 'award' or final decision." A.L.R. 2d 1055, § 2. Arbitrators are given the "power to grant injunctive relief in order to effectuate arbitration pursuant to Section 42 of the Commercial Arbitration Rules of the American Arbitration Association." Kamakazi Music Corp. v. Robbins Music Corp., 1980 WL 1159, *5-6 (S.D.N.Y. June 5, 1980). The Court finds that arbitrators have no limitation as to their authority for granting injunctive relief.

Finally, the Court prefers to stay litigation in favor of arbitration rather than to dismiss the case. The strong federal policy favoring arbitration and the significant relationship between the agreement and the dispute lead to the logical conclusion that the arbitration clause governs. A dismissal would be inappropriate as Empowered has presented a set of facts which support their claim and could entitle them to relief. See Mylan Labs, Inc., 7 F.3d 1130, 1134. The facts, viewed in a light most favorable to Plaintiff, provide evidence of a legally sufficient claim of copyright infringement and since such a claim may yield relief, it therefore should not be dismissed.

For the foregoing reasons, the undersigned finds that Empowered has failed to demonstrate that its claim falls outside the scope of the License Agreement and the arbitration clause it contains. Because the arbitration clause is valid and the dispute falls within the scope of the agreement, the arbitration clause should be enforced. Accordingly, the undersigned will grant the motion to stay pending arbitration.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's "Motion to Dismiss, or Alternatively, to Stay this Litigation and Compel the Parties to Arbitration" (Document No. 11) is **GRANTED**.

**IT IS FURTHER ORDERED** that this matter shall be stayed pending an arbitration proceeding between the parties.

Signed: June 5, 2007

David C. Keesler
United States Magistrate Judge